**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

IN RE:

CAROL A. BELLISTRI

       Debtor.                                 Case No. 7-19-10290-TA

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR THE ABANDONMENT OF PROPERTY BY NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER**

COMES NOW Nationstar Mortgage LLC D/B/A Mr. Cooper ("Creditor"), by and through its attorneys, Rose L. Brand & Associates, P.C. (Andrew Yarrington), and requests the Court for the entry of an Order lifting the automatic stay and abandoning certain real property. As grounds therefore, the Movant, states:

1.      This Court has exclusive jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

2.      This Court has proper venue over this proceeding pursuant to 28 U.S.C. § 1409.

3.      The Debtor, Carol A. Bellistri, filed a voluntary Chapter 7 bankruptcy petition on February 11, 2019.

4.      Edward Alexander Mazel is the Chapter 7 Trustee assigned in this bankruptcy case.

5.      The Debtor executed a Note (the "Note"), dated May 3, 2012, in the amount of $239,428.00, plus interest at the rate of 3.87500% per annum. See Exhibit A.

6.      As security for the Note, the Debtor gave a Deed of Trust, dated May 3, 2012, on the property located at 1813 Platte River Rd NE, Albuquerque, New Mexico 87144 (the "Property"), which was duly recorded at the Bernalillo County Clerk's office on May 8, 2012, in Book 415, at Page 11319 as Document No. 2012011319. See Exhibit B. The Property, which is

all the collateral listed in the Deed of Trust, is more fully and particularly described as:

> Lot Numbered Four (4), in Block Numbered Two (2), Corrales North Unit 2A, as the same is shown and designated on the plat of said subdivision entitled "CORRALES NORTH UNIT 2A, A SUBDIVISION OF TRACTS 'A', 'B' AND 'C', CORRALES NORTH UNIT 2, CITY OF RIO RANCHO, TOWN OF ALAMEDA GRANT, SANDOVAL COUNTY, NEW MEXICO", filed in the office of the County Clerk of Sandoval County, New Mexico, on November 21, 1989 in Rio Rancho Estates Plat Book No. 5, pages 116-117, (Vol. 3, folio 810A).

including any improvements, fixtures, and attachments, such as, but not limited to, mobile homes. If there is a conflict between the Property's legal description and the street address, the legal description shall control.

7.      Creditor is the holder of the Note through possession and the Deed of Trust through assignment. The Mortgage was assigned to Nationstar Mortgage LLC D/B/A Mr. Cooper through a Corporate Assignment of Mortgage dated April 25, 2018, and recorded on May 2, 2018, in Book 421, at Page 9838, as Document No. 2018009838, in the records of Bernalillo County. A copy of said Assignment is attached as Exhibit C.  Creditor is entitled to enforce said documents.

8.      Creditor claims a valid first priority position lien on the Property as described in the Deed of Trust.  The Debtor is in default under the terms of the Note and Deed of Trust for amounts due there upon.

9.      As of February 14, 2019, the payment arrears for contractual amounts due are $22,574.96, representing non-payment from January 1, 2018, through February 1, 2019, which includes two (2) payments of $1,676.44 each, plus twelve (12) payments of $1,601.84 each, for a total of fourteen (14) missed or insufficient payments in all.

10.      As of February 14, 2019, the total arrears due are $25,750.72.  The total arrears

due include the following amounts:

| | |
|---|---|
| Payment Arrears | $22,574.96 |
| Total Fees Due | $3,175.76 |
| **TOTAL ARREARS** | **$25,750.72** |

*in addition to interest, fees and costs continuing to accrue after the date this Motion's filing.

11.     As of February 14, 2019, the total debt obligation under the Note and secured through the Deed of Trust is $233,054.69.  The total debt amount includes the following:

| | |
|---|---|
| Principal Balance | $213,527.59 |
| Interest to and including February 14, 2019 accrued at the rate of 3.87500% | $10,342.80 |
| Escrow Advances | $6,008.54 |
| Miscellaneous Fees | $3,175.76 |
| **TOTAL DEBT** | **$233,054.69** |

12.     The Property may also be encumbered by other liens which may exceed the fair market value of the Property.

13.     The Debtor does not intend to cure the default on the Note and Deed of Trust. The Debtor stated, in his attachment to Schedule A, that he intended to give the Property back.

14.     Creditor is not adequately protected.

15.     The Debtor may have little to no equity in the Property and cannot offer any adequate protection, and the Property is not necessary for an effective reorganization.  Per the Debtor's Schedule A, the Property is worth $240,000.00.

16.     The Property is of no consequential value and benefit to the estate.

17.     To the extent that Creditor has paid for insurance coverage on the Property and in the event the stay is lifted, it is entitled to apply any insurance premium refunds to the outstanding loan balance.

18.     Concurrence of Debtor's counsel was sought but not obtained.

WHEREFORE, Creditor respectfully requests the Court enter an Order:

A. Lifting the automatic stay of 11 U.S.C. § 362(a) and abandoning the Property pursuant to 11. U.S.C. § 554, thereby permitting Creditor to exercise the rights and remedies it is afforded under the Note and Deed of Trust, including but not limited to the right to foreclose against the Property pursuant to State Law;

B. Waiving the fourteen day stay of the Order as provided by Fed. R. Bankr. P. 4001(a)(3).

C. Granting any other relief the Court deems just and proper.

ROSE L. BRAND & ASSOCIATES, P.C.

By /s/Andrew P. Yarrington
    ANDREW YARRINGTON
    Attorney for Creditor
    7430 Washington Street, NE
    Albuquerque, NM 87109
    Telephone: (505) 833-3036
    Andrew.Yarrington@roselbrand.com

I hereby certify that a copy of the foregoing pleading was sent via CM/ECF Filer automatic e-mail notification to the US Trustee and any party who filed a Request for Notice with the Court for electronic notification, in addition to the Attorney and Trustee listed below, and mailed by first class mailing, postage prepaid, to Debtor listed below:

| | | |
|---|---|---|
| Gary Lakin | Edward Alexander Mazel | Carol A. Bellistri |
| Attorney for Debtor | Chapter 7 Trustee | Debtor |
| 6727 Academy Rd NE Ste B | 1122 Central Ave. S.W. Suite 1 | 1405 32nd Circle SE |
| Albuquerque, NM 87109-3369 | Albuquerque, NM 87102 | Rio Rancho, NM 87124 |
| Telephone: 505-828-0400 | Telephone: (505) 433-3097 | |
| glakin3120@aol.com | | |

on this 4th day of March, 2019.

*/s/ Mitchell Billings*
MITCHELL BILLINGS, Paralegal

# NOTE

**Multistate**

FHA Case No.

May 3, 2012
[Date]

1813 Platte River Rd NE
Rio Rancho, NM 87144-6409
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
Freedom Mortgage Corporation

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
Two Hundred Thirty Nine Thousand Four Hundred Twenty Eight and 00/100
Dollars (U.S. $239,428.00     ), plus interest, to the order of Lender. Interest will be charged on
unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of
Three and Seven-Eighths
percent (    3.875 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same
date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might
result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
July 1, 2012    . Any principal and interest remaining on the first day of June, 2042    , will be due on that
date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at P.O. Box 8068, Virginia Beach, VA   23450-8068

or at such place as Lender may designate in writing
by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $   1,125.88     . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

10/95
VMP1R (1103).00
Page 1 of 3

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and No-Thousandths

percent (4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

10/95
VMP1R (1103).00
Page 2 of 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
Carol A Bellistri                -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower

[Sign Original Only]

☐ Refer to the attached Signature Addendum for additional parties and signatures.

Pay to the order of

_____

without recourse this _____ day of _____ 20____

Freedom Mortgage Corporation

Stanley C. Middleman
President/Chief Executive Officer

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

10/95
VMP1R (1103).00
Page 3 of 3



2012011319   05/08/2012 02:44:49 PM  B: 415 P: 11319
DEED TRUST       Pg 1 of 22
Sally G Padilla, Sandoval County Clerk

Return To:
Freedom Mortgage Corporation
Attn: Final Documents
P.O. Box 8001
Fishers, IN 46038-8001
Prepared By:



Return To: ███████████ -Cottonood
FIDELITY NATIONAL TITLE INSURANCE CO.

──────────────── [Space Above This Line For Recording Data] ────────────────

**State of New Mexico**     **DEED OF TRUST**   | FHA Case No. ███████████

MIN ███████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 2 and 16.

**(A) "Security Instrument"** means this document, which is dated May 3, 2012        , together with all Riders to this document.

**(B) "Borrower"** is Carol A Bellistri, a single woman,

Borrower is the mortgagor and trustor under this Security Instrument. The mailing address of the Borrower is   1813 Platte River Rd Ne, Rio Rancho                          NM          .

**(C) "Lender"** is Freedom Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of   The State of New Jersey
The mailing address of the Lender is   907 Pleasant Valley Av Ste 3, Mount Laurel, NJ   08054

**(D) "Trustee"** is Fidelity National Title of New Mexico, Inc.

─────────────────────────────────────────────

FHA Deed of Trust with MERS-NM                                    4/96 Amended 02/10
VMP ®                                                             VMP4N(NM) (1002).00
Wolters Kluwer Financial Services                                        Page 1 of 10

The mailing address of the Trustee is 3740 Ellison NW, Suite 102, Albuquerque, NM 87114

The Trustee may be changed by Lender (beneficiary) or its agent recording a Notice of Substitution of Trustee and providing notice to Trustee and Borrower.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee and beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated May 3, 2012

The Note states that Borrower owes Lender    Two Hundred Thirty Nine Thousand Four Hundred Twenty Eight and 00/100

Dollars (U.S. $ 239,428.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1, 2042

This Security Instrument secures a maximum principal amount of up to 150% of the original amount of the Note.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS, as the mortgagee and beneficiary of this Security Instrument, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County                                of Sandoval                                          :

[Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: 1017071205491                        which currently has the address of
1813 Platte River Rd NE                                                     [Street]
Rio Rancho                                  [City] , New Mexico 87144-6409 [Zip Code]
("Property Address"):

FHA Deed of Trust with MERS-NM
VMP ®                                                          4/96 Amended 02/10
Wolters Kluwer Financial Services                              VMP4N(NM) (1002).00
                                                                        Page 2 of 10

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund

FHA Deed of Trust with MERS-NM
VMP ®
Wolters Kluwer Financial Services

4/95 Amended 02/10
VMP4N(NM) (1002).00
Page 3 of 10

any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security

FHA Deed of Trust with MERS-NM
VMP ®
Wolters Kluwer Financial Services

4/96 Amended 02/10
VMP4N(NM) (1002).00
Page 4 of 10

Land Records Corp. OR ALB10973 SA 2012011319.004

Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

FHA Deed of Trust with MERS-NM
VMP ®
Wolters Kluwer Financial Services

4/96 Amended 02/10
VMP4N(NM) (1002).00
Page 5 of 10

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.

FHA Deed of Trust with MERS-NM
VMP ®
Wolters Kluwer Financial Services

4/96 Amended 02/10
VMP4N(NM) (1002).00
Page 6 of 10

Land Records Corp. OR ALB10973 SA 2012011319.006

The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

FHA Deed of Trust with MERS-NM
VMP®
Wolters Kluwer Financial Services

4/96 Amended 02/10
VMP4N(NM) (1002).00
Page 7 of 10

18. **Acceleration; Remedies.** Lender shall give notice to Borrower as provided in Section 13 prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 9 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure and sale of the Property by the Trustee pursuant to the power of sale or by judicial proceeding. If the default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument, at its option, either by Trustee's sale, in accordance with the procedures, including notice, under the New Mexico Deed of Trust Act ($48-10-1 et seq., NMSA [1978]), or through judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

If this Security Instrument secures a "home loan" as defined in the New Mexico Home Loan Protection Act (§ 58-21A-1 et. seq., NMSA [1978]), certain provisions of that act may be applicable with respect to default, notice, right to cure, method of foreclosure and/or other issues. Notwithstanding any other provisions in this Security Instrument, to the extent any provision of this Security Instrument is inconsistent with the applicable requirements of the Home Loan Protection Act, the provisions of that act shall control.

19. **Additional Statutory Provisions.** The Security Instrument is executed and delivered in conformity with Section 47-1-39 NMSA (1978) upon the statutory mortgage condition and the Deed of Trust Act.

20. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

21. **Redemption Period.** If this Security Instrument is foreclosed, the redemption period after judicial or non-judicial sale shall be one month.

22. **Receiver.** At any time after default, Lender (beneficiary) shall be entitled to the appointment of a receiver for the Property pursuant to the New Mexico Receivership Act (§ 44-8-1 et. seq., NMSA [1978]).

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider        ☐ Growing Equity Rider        ☐ Other [specify]
☒ Planned Unit Development Rider        ☐ Graduated Payment Rider

FHA Deed of Trust with MERS-NM
VMP®
Wolters Kluwer Financial Services

4/95 Amended 02/10
VMP4N(NM) (1002).00
Page 8 of 10

Land Records Corp. OR ALB10973 SA 2012011319.008

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Borrower

_Carol A Bellistri_  5/3/12

Date    Carol A Bellistri

(Seal)

_____

Date

(Seal)

_____

Date

(Seal)

_____

Date

(Seal)

☐  Refer to the attached Signature Addendum for additional parties and signatures.

FHA Deed of Trust with MERS-NM
VMP ®
Wolters Kluwer Financial Services

4/96 Amended 02/10
VMP4N(NM) (1002).00
Page 9 of 10

**Acknowledgment**
State of   New Mexico
County of   Bernalillo
This instrument was acknowledged before me on MAY 0 3 2012          by

Carol A. Bellestri

_____
Notary Public

My commission expires:



OFFICIAL SEAL
ALBERT D. MARTINEZ
NOTARY PUBLIC-STATE OF NEW MEXICO
My commission expires: 4-15-14

FHA Deed of Trust with MERS-NM                                    4/96 Amended 02/10
VMP ®                                                            VMP4N(NM) (1002).00
Wolters Kluwer Financial Services                                Page 10 of 10

## EXHIBIT A

Commitment No.:

Lot Numbered Four (4), in Block Numbered Two (2), Corrales North Unit 2A, as the same is shown and designated on the plat of said subdivision entitled "CORRALES NORTH UNIT 2A, A SUBDIVISION OF TRACTS 'A', 'B' AND 'C', CORRALES NORTH UNIT 2, CITY OF RIO RANCHO, TOWN OF ALAMEDA GRANT, SANDOVAL COUNTY, NEW MEXICO", filed in the office of the County Clerk of Sandoval County, New Mexico, on November 21, 1989 in Rio Rancho Estates Plat Book No. 5, pages 116-117, (Vol. 3, folio 810A).

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



FDNM0166.rdw

# PLANNED UNIT DEVELOPMENT RIDER

| FHA Case No. |
|---|
|  |

THIS PLANNED UNIT DEVELOPMENT RIDER is made this ⬛ 3rd ⬛ day of May, 2012 ⬛⬛⬛⬛⬛⬛, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to Freedom Mortgage Corporation

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

1813 Platte River Rd NE
Rio Rancho, NM 87144-6409
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as Corrales North

[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless

⬛ FHA Multistate PUD Rider – 10/95
Wolters Kluwer Financial Services
VMP®-589U (0402).02
Page 1 of 2        Initials: _____



Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Carol A Bellistri_ (Seal)
Carol A Bellistri          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

VMP®-589U (0402).02          Page 2 of 2



**EXHIBIT**

**C**

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

2018009838 B: 421 P: 9838 AM
05/02/2018 08:09:34 AM Page 1 of 1
Eileen Garbagni, County Clerk-Sandoval County, NM

## CORPORATE ASSIGNMENT OF MORTGAGE

Sandoval, New Mexico
SELLER'S SERVICING # ████████ "BELLISTRI"

MIN # ████████ SIS #: 1-888-679-6377

Date of Assignment: April 25th, 2018
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FREEDOM
MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER at 8950 CYPRESS WATERS BLVD., COPPELL,
TX 75019

Executed By: CAROL A BELLISTRI, A SINGLE WOMAN To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR FREEDOM MORTGAGE CORPORATION
Date of Mortgage: 05/03/2012 Recorded: 05/08/2012 in Book/Reel/Liber: 415 Page/Folio: 11319 as Instrument
No.: 2012011319 In the County of Sandoval, State of New Mexico.

Property Address: 1813 PLATTE RIVER RD NE, RIO RANCHO, NM 87144-6409

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $239,428.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FREEDOM MORTGAGE
CORPORATION, ITS SUCCESSORS AND ASSIGNS
On April 25th, 2018

By: _____
OMAR BASPED, Vice-President

STATE OF Texas
COUNTY OF Dallas

On April 25th, 2018, before me, DANIELA HORVATH, a Notary Public in and for Dallas in the State of Texas,
personally appeared OMAR BASPED, Vice-President, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

_____
DANIELA HORVATH
Notary Expires: 01/27/2020 #128862890

> DANIELA HORVATH
> Notary Public, State of Texas
> Comm. Expires 01-27-2020
> Notary ID 128862890

(This area for notarial seal)